**LEXTRON, INC., a Colorado corporation and Dr. Robert C. Hummel, Plaintiffs,**

v.

**TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA and TIG Insurance Company, Defendants.**

No. CIV.A. 01–K–429.

United States District Court, D. Colorado.

June 18, 2003.

**1042**

Jeffrey Scott Detlefs, Jeff Detlefs, P.C., Denver, CO, Dennis J. Bartlett, Kerr, Brosseau, Bartlett, O'Brien, LLC, Denver, CO, for Plaintiffs.

Kevin F. Amatuzio, Steven Gregory Greenlee, Montgomery, Kolodny, Amatuzio & Dusbabek, LLP, Denver, CO, Thomas Holden, Morison–Knox, Holden, Melendez & Prough, Walnut Creek, CA, for Travelers Casualty and Surety Co. of America.

Kieth Van Doren, Burg, Simpson, Eldredge, Hersh & Jardine, P.C., Englewood, CO, for TIG Insurance Co.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Plaintiffs Lextron, Inc. ("Lextron"), a Colorado corporation engaged in the distribution of veterinary products, and Dr. Robert C. Hummel ("Hummel"), a veterinarian and the President of Lextron, assert claims against Defendants Travelers Casualty and Surety Company of America ("Travelers") and TIG Insurance Company ("TIG") for breach of contract and bad faith breach of insurance contract. Both claims arise from Travelers' and TIG's refusal to defend Plaintiffs in an action brought against them by William Stovall ("Stovall litigation"). Lextron and Hummel moved for partial summary judgment on the breach of contract claim, and both Travelers and TIG filed cross-motions for summary judgment on all claims, or, in the alternative, for partial summary judgment on the bad faith claim. For the reasons stated below, I deny Plaintiffs' motion for partial summary judgment and grant Defendants' motions for summary judgment on both claims.

### I. Background

The following facts are undisputed unless otherwise noted:

Lextron sells veterinary and animal healthcare products. Hummel is a veterinarian and the President of Lextron. At the time the Stovall litigation arose, Plaintiffs were covered by a commercial general liability insurance contract with Travelers, then known as Aetna Casualty and Surety Company of America (the "Travelers insurance contract"). Both Plaintiffs are listed as named insureds under the contract.

The TIG policy is basically a "following form" excess policy to the Travelers insurance contract, and provides similar coverages and exclusions.[1] All parties agree

---

1. TIG asserts in support of its cross-motion that the coverage provided by its contract with Plaintiffs is distinct from that in the Travelers insurance contract because it is an occurrence-based policy and because the TIG policy referenced in the Plaintiffs' complaint, policy number XLB9231278, was not in effect when the Stovall litigation arose. I need not consider these contentions and their implications in this litigation because alternate grounds exist to grant TIG's cross-motion.

TIG has no duty to defend Plaintiffs unless Travelers also has a duty to defend, and that TIG's policy obligations are only triggered if and when Travelers exhausts their policy limits, or if and when Travelers wrongfully refuses to defend Plaintiffs. Therefore, for the purposes of deciding the parties' cross-motions for summary judgment, only the Travelers insurance contract and the duty to defend under that contract need be examined.

### A. *The Travelers Insurance Contract*

The Travelers insurance contract requires Travelers to indemnify the named insureds for damages they become legally obligated to pay for bodily injury, property damage, personal injury, and advertising injury and to defend any suit seeking such damages. Both this duty to indemnify and duty to defend are subject to the definitions, exclusions and limitations of the policy.

As relevant here, the Travelers insurance contract initially extends coverage for "products-completed operations hazard," which is defined as follows:

*"Products–Completed Operations Hazard"* includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) products that are still in your physical possession; or

(2) work that has not yet been completed or abandoned.

*"Your product"* under the contract means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; . . . .

and includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product;" and

b. The providing of or failure to provide warnings or instructions.

Plaintiffs modified this base coverage by agreeing to a designated products exclusion that limits products coverage only to a certain type of milking machine. Specifically, this exclusion provides that any "bodily injury" or "property damage" arising from "your products" outside of a particular milking machine are not covered under· the Travelers insurance contract.

The Travelers insurance contract also includes "personal injury" coverage for certain "personal injury" offenses. As relevant here, the contract provides:

"Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:

\* \* \* \* \* \*

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

In addition, the Travelers insurance contract includes a "Separation of Insureds" clause, which provides that the insurance applies "(1) as if each Named Insured were the only Named Insured; and (2) [s]eparately to each insured against whom claim is made or 'suit' is brought."

Lastly, the Travelers insurance contract defines "you" and "your" as used in the contract:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.

Both Lextron and Hummel are named insureds in the Travelers insurance contract.

### B. *The Stovall Litigation*

In the underlying lawsuit, filed in Montana federal court on October 14, 1998, plaintiff William Stovall asserts claims against Lextron, Hummel, and others as the result of the alleged failure of cattle vaccine products sold and/or manufactured by them to protect Stovall's cattle herd from Bovine Viral Diarrhea ("BVD"). Stovall's complaint alleges the named defendants, including Lextron and Hummel "sold a product in a defective condition," "are in the business of selling the product," "were merchants with respect to the type of product involved herein," and "marketed the Vaccines to the public." (Stovall Compl., ¶¶ 89, 90, 105 130). The complaint asserts seventeen claims for relief, sixteen of which allege property damages arising from the defendants' BVD vaccine products.

The only Stovall claim unrelated to the BVD vaccines, the Fifteenth Claim for Relief, is entitled "Intentional Interference with Contractual Relations" and names Hummel exclusively as a defendant. In this claim, Stovall alleges the following: Stovall confided in Hummel at one point that he did not think he could make his next loan payment to the United Bank of Absarokee (the "Bank"). Hummel then hired a private investigator who contacted the Bank and attempted to gain access to Stovall's financial information. Later, Hummel personally contacted the Bank's president by phone, mentioned that another rancher in a similar situation to Stovall's had "screwed" another Montana bank, and suggested the Bank president should call Stovall's notes due now to avoid any problems. Neither Hummel nor his private investigator succeeded in their attempts to gain information and/or action from the Bank, and the Bank president allegedly chided Hummel for his behavior. Stovall concludes by alleging that the goal of Hummel's actions was "to make Stovall's performance of his contractual obligations to the Bank impossible or more burdensome, and thus to put such economic and emotional pressure on Mr. Stovall so that he could not pursue his claims against Lextron." (*Id.*, ¶ 121).

### C. *Events Between Parties After the Stovall Complaint Was Filed*

Lextron and Hummel provided Travelers with notice of the Stovall suit on November 9, 1998. Travelers responded in December, 1998, by notifying Plaintiffs it had hired an attorney in Billings, Montana, to defend the suit. The parties dispute whether Travelers also notified Plaintiffs at this time that it reserved its right to contest coverage.

Shortly after assuming Plaintiffs' defense, on February 2, 1999, Travelers informed the Plaintiffs in a letter to their personal attorney that it had determined it had no coverage obligations with respect to the claims asserted in the Stovall litigation and that it was therefore withdrawing its defense of this action. Plaintiffs demanded that Travelers reverse its decision, or, alternatively, that TIG take over the defense. Travelers held fast to its non-coverage decision and TIG also refused to defend the Plaintiffs, agreeing with Travelers' analysis that there was no duty to defend based on the claims asserted in the Stovall complaint.

## II. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c). In applying this standard, the Court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party. *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir.1999). Where, as here, the parties file cross motions for summary judgment, the court is "entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir.1997). A material fact is one that might affect the outcome of the dispute under the applicable law. *Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir.1995). When reviewing cross-motions for summary judgment, the " 'review of the record requires [the court to] construe all inferences in favor of the party against whom the motion under consideration is made.' " *Pirkheim v. First Unum Life Insurance*, 229 F.3d 1008, 1010 (10th Cir.2000).

## III. Merits

The dispositive issue in this case is whether Travelers has a duty to defend Lextron and Hummel in the Stovall litigation. In Colorado, the governing law for this question is set forth in *Hecla Mining Co. v. New Hampshire Insurance Co.*, 811 P.2d 1083, 1089 (Colo.1991), which provides that an insurer's duty to defend arises when the underlying complaint against the insured "alleges any facts that might fall within the coverage of the policy.... [T]he obligation to defend arises from allegations in the complaint, which if sustained, would impose a liability covered by the policy." *Id.* at 1089. If the claims are entirely outside the coverage, or if they are excluded by the terms of the insurance policy, then there is no duty to defend. *Id.* at 1090. Therefore, the determination of Travelers' duty to defend depends on an analysis of the coverage provided in the Travelers insurance contract and the claims made in the Stovall complaint.

Plaintiffs argue that the Travelers contract obligates Travelers to provide Hummel with coverage and a defense to Stovall's sixteen product-related claims under the Separation of the Insureds clause, and his Fifteenth Claim against Hummel alone under the contract's provision for personal injury coverage. Based on other allegations in the Stovall complaint, Plaintiffs allege the Fifteenth Claim may also be asserted against Lextron, thus obligating Travelers to defend it with respect to this claim as well. Lextron and Hummel further assert Travelers waived its right to deny coverage and withhold a defense because it initially provided the Plaintiffs with a defense without reserving its right to dispute coverage.

### A. The Products-related Claims Against Hummel

■ The First through Fourteenth, Sixteenth, and Seventeenth claims in the Stovall complaint all arise from the allegedly defective BVD vaccine products manufactured and sold to Stovall by Lextron, Hummel and the other named defendants. On their face, all of these claims are excluded from coverage under the designated products exclusion to the Travelers insurance contract, which specifies that any bodily injury or property damage arising from "your products" (with an exception

not relevant here) are not covered under the insurance contract.

Plaintiffs do not dispute that the designated products exclusion eliminated coverage for Lextron with respect to the sixteen claims arising from the BVD vaccine products, but assert the exclusion does not apply to Hummel because he was not involved in the manufacture, sale and/or distribution of the BVD vaccines so they do not qualify as "his" products. Under the Separation of Insureds clause, therefore, which requires Travelers to treat each named insured as if he were the only named insured, Plaintiffs argue Travelers is required to provide Hummel with coverage and a defense to all of Stovall's product-related claims.

Plaintiffs' argument fails on its assumption that the BVD vaccine products were not Hummel's products for purposes of applying Travelers' designated products exclusion. *Hecla* states that the allegations of the underlying complaint control coverage, 811 P.2d at 1090, and the underlying complaint in *Stovall* alleges that the "defendants" manufactured and sold the BVD vaccine. Hummel is one of the defendants in the Stovall litigation. Although Plaintiffs argue that the term "defendants" as it is used in the Stovall complaint "could refer to two defendants, three defendants, four defendants or all five of the defendants," absent specific language to the contrary, this term simply means all of the defendants named in the complaint. Under *Hecla*, the allegation in the Stovall complaint that Hummel along with the other named defendants manufactured and sold the BVD vaccines defeats Plaintiffs' argument that the vaccines were not Hummel's products for purposes of applying the designated products exclusion.

Plaintiffs' argument also fails under the terms of the Travelers insurance contract itself. The key phrase in the exclusion

relied upon by Plaintiffs is "your products." The Travelers insurance contract defines the words "you" and "your" to include any other person or organization qualifying as a named insured under the policy. Both Hummel and Lextron are listed as named insureds in the policy, so, under the policy's own terms, the BVD vaccines are as much Hummel's products as they are Lextron's. Examination of coverage availability for Hummel and Lextron separately, as the Separation of Insureds clause requires, in light of the "your products" definition in the Travelers insurance contract, still results in the conclusion that the designated products exclusion applies to both Hummel and Lextron and precludes coverage and any duty to defend Stovall's product-related claims.

### B. *Stovall's Fifteenth Claim for Relief*

Plaintiffs argue that the Travelers insurance contract also provides coverage for Stovall's Fifteenth Claim for Relief against Hummel alone. Although the Fifteenth Claim is labeled as a claim for "Intentional Interference with Contractual Relations," Plaintiffs assert it could be construed as a claim for personal injury, similar to defamation or invasion of privacy, both of which are covered under the Travelers insurance contract. If Hummel is covered for the Fifteenth Claim, then Travelers has a duty to defend him for all claims brought in the Stovall suit, for, "under Colorado law, if the underlying complaint asserts more than one claim, a duty to defend against all claims asserted arises if any one of them is arguably a risk covered by the pertinent policy." *Blackhawk–Central City Sanitation Dist. v. Am. Guar. & Liability Co.,* 214 F.3d 1183, 1189 (10th Cir.2000) (applying Colorado law).

Some courts have found that claims in an underlying action could be covered by an insurance policy and trigger the duty to

defend, even if they are not labeled as a covered claim, when all of the elements of a claim covered by the policy are alleged. *Liberty Bank of Mont. v. Travelers Indem. Co. of Am.*, 870 F.2d 1504, 1508 (9th Cir. 1989) (applying Montana law). In *Liberty Bank*, two of the elements of defamation were set forth in an interrogatory answer, but the court held that no duty to defend existed because a third element, falsehood, was not among the facts asserted. "Because falsehood is an element of defamation, facts which set forth some elements of defamation but not falsehood, when construed in light of a complaint which does not include a cause of action for defamation, do not trigger a duty to defend." *Id.* (internal citations omitted). Therefore, where some, but not all, elements of a covered claim are asserted in a complaint, and the complaint does not include the covered claim, no duty to defend exists. *See id.*

■ In the case at hand, Plaintiffs assert Stovall's Fifteenth Claim resembles either a defamation claim or an invasion of privacy claim, both of which are covered under the Travelers insurance contract, and that the contract therefore provides coverage for this claim. Defendants are correct, however, that the Fifteenth Claim does not include all of the elements for either of these claims. Under Montana law, a defamation claim requires that the statement be a false and unprivileged publication. *Anderson v. City of Troy*, 316 Mont. 39, 68 P.3d 805, 807 (2003). Stovall's Fifteenth Claim does not include any allegations that Hummel's conversation with the Bank president included any falsities. In fact, the Fifteenth Claim asserts that Hummel merely made suggestions to the Bank president, and implied that Stovall could "screw" the bank. These statements do not constitute slander or defamation because there is no allegation that they were false. Moreover, they are statements of opinion and not fact.

■ The Fifteenth Claim also does not include all of the elements of an invasion of privacy claim covered by the Travelers insurance contract. The contract covers claims for "[o]ral or written publication of material that violates a person's right to privacy." Montana follows the definition of invasion of privacy set forth in the *Restatement (Second) of Torts* (the "Restatement"), *see, e.g., Lence v. Hagadone Inv. Co.*, 258 Mont. 433, 853 P.2d 1230, 1237 (1993), which includes two invasion of privacy claims that encompass an oral or written publication requirement: unreasonable publicity given to the other's private life (§ 652D), and publicity that unreasonably places the other in a false light before the public (§ 652E). The first of these claims requires that a private matter having certain characteristics be "publicized." *Restatement (Second) of Torts*, § 652D (1977). The Restatement makes clear, however, that "publicized" in this context is not the same as "publication" in the defamation context: "it is not an invasion of the right of privacy, . . . to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons." *Restatement (Second) of Torts*, § 652D, cmt. a. Because Stovall alleges Hummel only "publicized" his opinion to one person, *i.e.*, the Bank president, the allegations in the Fifteenth Claim fail to allege Stovall's private matters were publicized as required to state a claim for invasion of privacy under Restatement § 652D.

Stovall's Fifteenth Claim also does not state a claim for invasion of privacy pursuant to Restatement § 652E, Publicity Placing Person in False Light. This section reads as follows:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Id.,* § 652E. "It is essential to the rule stated in this Section that the matter published concerning the plaintiff is not true." *Id.,* § 652E, cmt. a. As discussed in the defamation analysis above, there is no allegation that the reported conversation between Hummel and the Bank president was false, so Restatement § 652E also does not apply.

Accordingly, Stovall's Fifteenth Claim does not allege all of the elements necessary to state either a defamation or invasion of privacy claim under Montana law, and hence does not state a personal injury claim covered by the Travelers insurance contract. Because there is no factual or legal basis for coverage of this claim, Travelers does not have a duty to defend it, and has not breached its contract with the Plaintiffs by failing to do so. *Hecla,* 811 P.2d at 1090.[2]

### C. *Estoppel*

 Plaintiffs lastly assert Defendants are estopped from disclaiming a duty to defend as a result of their initial assumption of the defense without reserving their right to contest coverage in the future. The parties dispute whether Travelers indeed provided Plaintiffs with a reservation of rights letter, but this dispute is immaterial to the disposition of the parties' cross-motions because "[w]aiver or estoppel do[es] not necessarily result from the entry of an appearance for the insured by the insurer nor from investigation of the case

by the insurer for a reasonable period of time." *Board of County Comm'rs of Larimer v. Guar. Ins. Co.,* 90 F.R.D. 405, 409 (D.Colo.1981) (applying Colorado law). "[W]here the insurer makes a timely notice of its disclaimer and the grounds therefore, there is no presumption of prejudice and the insured must carry its burden of showing reliance to its detriment before estoppel can bar a defense of non-coverage.... [M]ere delay in making a disclaimer is not enough." *Larimer,* 90 F.R.D. at 409.

In this case, Travelers notified the Plaintiffs of its intention to withdraw from the defense of the Stovall litigation on February 2, 1999, approximately two months after it assumed the defense and less than four months after the Stovall litigation commenced. Plaintiffs have not alleged any form of detrimental reliance on Travelers' brief assumption and subsequent withdrawal from the defense in this early stage of the Stovall action. As a result, Plaintiffs' estoppel argument fails.

### IV. *Conclusion*

For the reasons stated above, I hold that no claims in the underlying Stovall action fall or arguably could fall within the coverage of the Travelers insurance contract and therefore neither Travelers nor TIG had a duty to defend Plaintiffs in this action. In the absence of any duty to defend or indemnify, Plaintiffs cannot prevail as a matter of law on their breach of contract or bad faith breach of insurance contract claims. Accordingly, Plaintiffs' Motion for Partial Summary Judgment is DENIED and Travelers' and TIG's Cross–Motions for Summary Judgment are GRANTED. Judgment shall enter in fa-

---

**2.** As result of this conclusion, I need not address Plaintiffs' additional assertion that Stovall's Fifteenth Claim is also asserted against

Lextron, thus triggering coverage and a duty to defend this claim on Lextron's behalf.

vor of Defendants and against Plaintiffs on all claims.

IT IS SO ORDERED.