John Doss THOMPSON, Jr.; and Hiwan Ridge Development Company, Inc., Petitioners,

v.

MARYLAND CASUALTY COMPANY and Northern Insurance Company of New York, Respondents.

No. 02SC525.

Supreme Court of Colorado, En Banc.

Feb. 9, 2004.

Kelly Haglund Garnsey Kahn LLC, Norman D. Haglund, Christine L. Murphy, Denver, Colorado, Attorneys for Petitioners.

Wells, Anderson & Race LLC, Geoffrey S. Race, L. Michael Brooks, Jr., Denver, Colorado, Attorneys for Respondents.

Justice BENDER delivered the Opinion of the Court.

## INTRODUCTION

In this duty to defend insurance case, we review the court of appeals' decision in *Thompson v. Maryland Casualty Co.*, No.

01CA1039, slip op., 2002 WL 1452541 (Colo. App. June 27, 2002). That court held that under the facts alleged in the underlying complaint the insurers have no duty to defend the insureds under provisions of a commercial general liability insurance policy that provides the insureds coverage against claims of malicious prosecution and disparagement. Alternatively, the court of appeals held that the insurers had no duty to defend against the disparagement claim because allegations in the underlying complaint triggered a policy provision excluding coverage for material published with knowledge of its falsity. We affirm.

In this case, the insureds, John D. Thompson, Jr. and Hiwan Ridge Development Company, Inc. (collectively, "Thompson"), purchased insurance policies through Maryland Casualty Company and Northern Insurance Company of New York ("insurers") covering claims for malicious prosecution and disparagement. Thompson brought this suit against the insurers seeking the costs of defending against the malicious prosecution and disparagement claims.

We hold that claims covered in an insurance policy must be construed as legal claims rather than as lay terms. In analyzing the insurer's duty to defend, we look initially to the claims expressly covered by the policy, and next we determine the elements of those claims under Colorado case law. This approach furthers the reasonable expectations of the parties to the insurance contract.

Applying this standard here, we hold that an insurer is not required to defend its insured against a claim of malicious prosecution where the complaint fails to allege that the insured's wrongful filing of a lis pendens was resolved in favor of the plaintiff. Under Colorado law the tort of malicious prosecution requires that the element of favorable resolution of the prior action be alleged.

We disagree with the court of appeals' holding that the complaint failed to allege the elements of a claim for disparagement of services as covered in the insurance policy. The complaint alleged that the insureds disparaged the services of the plaintiff by interfering with the plaintiff's ability to develop and sell real property. However, the insurers had no duty to defend because the complaint alleged that the insureds knew that their disparaging statement was false, and, as a consequence, the knowledge-of-falsity exclusion provision precluded coverage.

We therefore affirm the court of appeals' holding affirming the trial court's grant of summary judgment for the insurers, and return this case to that court with directions to remand the case to the trial court to dismiss.

## I. FACTS AND PROCEEDINGS BELOW

Petitioner Thompson purchased commercial general liability insurance policies through respondents Maryland Casualty Company and Northern Insurance Company of New York.[1] Maryland was the primary carrier and Northern was the excess carrier.

Thompson's policy provides that the insurers will defend against claims for "personal injury," which include "[m]alicious prosecution" and "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services." The policy excludes coverage for disparagement claims where the insured publishes material "with knowledge of its falsity."[2]

In 1992, Thompson and Ridge at Hiwan, Ltd. ("Ridge"),[3] a landholding partnership

---

1. Because the relevant provisions of the two policies are identical, we refer to them in the singular as Thompson's insurance "policy."

2. The Maryland policy excludes coverage "arising out of oral or written publication of material, if done by or at the direction of insured with knowledge of its falsity." Similarly, the Northern policy excludes coverage for "[p]ersonal injury ... arising from oral or written publication of material, if done by or at the direction of 'insured' with knowledge of its falsity." Even

though the provisions are slightly different, their differences are irrelevant for the purposes of this opinion. We refer to these provisions in the singular as the· knowledge-of-falsity exclusion provision.

3. We refer to Thompson, Jr. and Hiwan Ridge Development Company collectively as "Thompson." This is to avoid confusing Thompson's corporation, Hiwan Ridge Development Company, Inc., with the similar sounding Ridge at Hi-

that subsequently became involved in real estate development, settled a dispute arising from an earlier real estate venture. This settlement agreement provided, in part, that Thompson would have a right of first refusal to purchase property owned by Ridge and that Thompson would cooperate with Ridge in future platting efforts in Jefferson County. According to Ridge, Thompson agreed in this settlement to provide Ridge with necessary documents and property if Ridge required "an earlier conveyance for purposes of meeting platting requirements of Jefferson County."

Eventually another dispute arose between Ridge and Thompson, which ultimately led Ridge to file a complaint against Thompson. In its 1994 complaint, Ridge alleged that two years after their settlement agreement, when Ridge attempted to dedicate property to Jefferson County, Thompson refused to consent to or cooperate with the platting and development process or to waive his right of first refusal. Ridge claimed that Thompson's refusal to cooperate in the platting process violated the settlement agreement and constituted breach of contract, tortious interference with prospective economic or business advantage, and slander of title.

After Ridge's initial complaint was filed, Thompson sent a letter to the Jefferson County Planning Department claiming a preemptive right of first refusal covering the property to be dedicated, and stating that he would "not subordinate this right to Jefferson County, consent to the plat, nor in any way sign or participate in any plat documents or subdivision improvement agreements." Thompson also filed a notice of lis pendens against Ridge's property and recorded the 1992 settlement agreement between him and Ridge in Jefferson County.

Ridge then amended its complaint, alleging that Thompson's letter to the Jefferson County Planning Department claiming a preemptive right of first refusal was "false" and "contrary to the express and implied terms" of their 1992 settlement agreement. The amended complaint included additional claims against Thompson, including intentional interference with contractual relations, breach of implied covenants of good faith and fair dealing, and fraud.

The gist of Ridge's complaint was that by sending the false letter to the Planning Department, Thompson breached the terms of the 1992 settlement agreement, which prevented Jefferson County from granting final plat approval and interfered with Ridge's sale of the property. Further, the complaint alleged that Thompson's lack of cooperation in violation of the settlement agreement would force Ridge to obtain less favorable bank financing or to sell the property as an undivided parcel at a significantly reduced price. In addition, Ridge claimed that when Thompson sent the letter in 1994, Thompson knew that Ridge had entered into a contract to sell the property to a specific third party. Ridge claimed that all of Thompson's actions in breach of their earlier settlement were "intentional," "malicious," "willful and wanton," and "attended by circumstances of fraud."

Over a year after Ridge's amended complaint was filed, Thompson informed the insurers of this lawsuit. The insurers refused to defend or indemnify Thompson, reasoning that the claims raised against Thompson did not fall within his insurance coverage.

A jury found for Ridge at trial.[4] At that time, Thompson requested that the insurers reconsider their denial of coverage, but they refused.

Subsequently, Thompson filed a complaint against the insurers, alleging that they had breached their contractual duty to defend and indemnify him in this litigation. Both the insurers and Thompson filed cross-motions for summary judgment. The trial court granted summary judgment for the insurers, concluding that they had no duty to defend in this case.

---

wan, Ltd., the landholding partnership that filed a complaint against Thompson.

4. A division of the court of appeals reversed and remanded the trial court judgment. *Ridge at*

*Hiwan Ltd. v. Hiwan Ridge Dev. Co.*, No. 96CA1411, slip op. (Colo.App. Oct. 23, 1997). Subsequently, Thompson and Ridge reached another settlement.

Thompson appealed. The court of appeals affirmed the trial court, holding that the insurers were not required to defend him because factual allegations in the underlying complaint did not support either a claim of malicious prosecution or disparagement. *See generally Thompson,* No. 01CA1039, slip op.

The court of appeals reasoned that the term "malicious prosecution" is not ambiguous under Colorado law. The factual allegations in the underlying complaint failed to allege that the earlier action filed by Thompson against Ridge had been resolved in Ridge's favor, which is a necessary element of malicious prosecution. Thus, the court concluded that the insurers' duty to defend had not been triggered. *Id.* at 10.

Further, the court reasoned that although a lis pendens filing could form the basis of a malicious prosecution claim, such a claim could not be brought until the action involving the lis pendens ended in favor of the plaintiff. *Id.* at 7. Because the underlying complaint failed to allege that the action involving the lis pendens had terminated in Ridge's favor, the court concluded that the insurers had no duty to defend on the basis of the insurance policy's malicious prosecution coverage. *Id.* at 8–9.

Turning to the disparagement claim, the court of appeals held that the insurers did not have a duty to defend Thompson because Ridge's complaint failed to allege that Thompson disparaged Ridge's "goods, products, or services" as those terms are defined in the policy. *Id.* at 12. Alternatively, the court of appeals ruled that "[t]o the extent that the allegations in the amended complaint imply that [Thompson] knew" that he had waived his right of first refusal when he sent the letter to Jefferson County, the insurers had no duty to defend him because

the policy excluded coverage for disparaging material published by the insured "with knowledge of its falsity." *Id.* at 15.

Thompson now appeals, arguing that the insurers have a duty to defend him in this case under the terms of the policy.[5]

## II. STANDARD OF REVIEW AND THE INSURER'S DUTY TO DEFEND

We review the court of appeals' decision to affirm the trial court's grant of summary judgment for the insurers de novo. *State Farm Mut. Auto. Ins. Co. v. Kastner,* 77 P.3d 1256, 1261 (Colo.2003). Summary judgment is appropriate where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Simpson v. Bijou Irrigation Co.,* 69 P.3d 50, 58 (Colo.2003).

We construe an insurance policy's terms according to principles of contract interpretation. *Hecla Mining Co. v. New Hampshire Ins. Co.,* 811 P.2d 1083, 1090 (Colo.1991). In interpreting a contract, we seek to give effect to the intent and reasonable expectations of the parties. *Allen v. Pacheco,* 71 P.3d 375, 378 (Colo.2003). Accordingly, unless the parties intend otherwise, terms in an insurance policy should be assigned their plain and ordinary meaning. *Compass Ins. Co. v. City of Littleton,* 984 P.2d 606, 613 (Colo.1999).

We also recognize that unlike a negotiated contract, an insurance policy is often imposed on a "take-it-or-leave-it" basis. *Huizar v. Allstate Ins. Co.,* 952 P.2d 342, 344 (Colo.1998). Therefore, we assume a "heightened responsibility" in reviewing insurance policy terms to ensure that they comply with "public policy and principles of

5. We granted certiorari on the following four issues:
1) Whether the Court of Appeals applied Colorado law correctly on the duty to defend.
2) Whether, as viewed through the eyes of a reasonably intelligent insurance consumer, the plain and ordinary meaning of the undefined term "malicious prosecution" is sufficiently ambiguous to require an insurer to defend its insured against factual allegations supporting claims of abuse of process or intentional interference with contract.
3) Whether factual allegations that an insured wrongfully and maliciously filed a statutory notice of lis pendens trigger an insurer's duty to defend under the "malicious prosecution" provisions of a commercial general liability policy.
4) Whether factual allegations that an insured sent a false letter to county authorities disparaging an underlying plaintiff's development efforts in order to derail plat approval trigger an insurer's duty to defend under the policy's "disparagement" provisions.

fairness." *Id.* Accordingly, ambiguous terms in an insurance policy are construed against the insurer. *State Farm Mut. Auto. Ins. Co. v. Nissen,* 851 P.2d 165, 166 (Colo.1993).

We begin our discussion of the insurer's duty to defend by reviewing general principles regarding the duty to defend that are not in dispute in this case. The duty to defend provides notice to an insurer so that it can adequately defend against third party claims. *See* Robert H. Jerry, II, *Understanding Insurance Law* 729, 731 (2d ed.1996). The source of the insurer's duty to defend is contractual, deriving from the insurance policy itself. *Id.* at 729; *see also Cyprus Amax Minerals Co. v. Lexington Ins. Co.,* 74 P.3d 294, 299 (Colo.2003) ("An insurance policy is merely a contract that courts should interpret in line with well-settled principles of contract interpretation.").

To analyze the insurer's duty to defend, we consider whether the factual allegations in the underlying complaint trigger coverage under an insurance policy's terms. *Cyprus,* 74 P.3d at 299 (citing *Hecla,* 811 P.2d at 1089). An insurer has a duty to defend where a complaint against its insured "alleges any facts that might fall within the coverage of the policy," even if allegations only "potentially or arguably" fall within the policy's coverage.[6] *Hecla,* 811 P.2d at 1089. In *Cyprus,* we stated that the duty to defend is "designed to cast a broad net in favor of coverage" and that it must be construed "liberally with a view toward affording the greatest possible protection to the insured." 74 P.3d at 297. An insurer seeking to avoid its duty to defend bears a "heavy burden." *Hecla,* 811 P.2d at 1089. In *Hecla,* we explained that this heavy burden "comports with the insured's legitimate expectation of a defense, and prevents the insurer from evading coverage by filing a declaratory judgment action." *Id.* at 1090.

When all the elements of a claim covered by a policy are alleged, an insurer has a duty to defend its insured, even if a claim is not labeled according to the terms used in an insurance policy. *Lextron, Inc. v. Travelers Cas. & Sur. Co. of Am.,* 267 F.Supp.2d 1041, 1046–47 (D.Colo.2003). However, if an underlying complaint fails to allege facts satisfying one of the elements of a claim covered in an insurance policy, an insurer has no duty to defend against that claim. *See, e.g., QSP, Inc. v. Aetna Cas. & Sur. Co.,* 256 Conn. 343, 773 A.2d 906, 919–20 (2001). Once the duty to defend has been established, then the insurer must defend its insured unless an exclusion in the insurance policy precludes coverage. *Hecla,* 811 P.2d at 1090.

Where general language in an insurance contract is undefined or is otherwise ambiguous, we construe it against the insurer and interpret it according to its plain and ordinary meaning. *See, e.g., Hecla,* 811 P.2d at 1090–92 (turning to case law and dictionary definitions to clarify undefined "sudden and unexpected" phrase in insurance policy); *Cyprus,* 74 P.3d at 304–06 (turning to case law and dictionary definition to explain the ambiguous term "property damage").

While the duty to defend principles discussed above are settled under Colorado law, Thompson and the insurers disagree as to how claims covered in an insurance policy should be construed. Thompson argues that claims such as malicious prosecution and disparagement should be interpreted as lay terms and assigned their plain and ordinary meanings as found in lay dictionaries. In contrast, the insurers argue that covered claims should be construed as legal claims.

We agree with the insurers and resolve this issue by turning to principles of insurance contract interpretation. The first step in analyzing the insurer's duty to defend is to look to the claims expressly covered by an insurance policy. Next, we refer to our

---

6. *See also Cyprus,* 74 P.3d at 299 (insurer has duty to defend "if the alleged facts even potentially trigger coverage under the policy"); *Hecla,* 811 P.2d at 1090 ("An insurer is not excused from its duty to defend unless there is no factual or legal basis on which the insurer might eventually be held liable to indemnify the insured."); *Compass,* 984 P.2d at 614 ("In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove that it cannot.").

case law to determine the elements of the covered claims. The court of appeals in this case followed the correct approach by construing the covered claim of malicious prosecution as consisting of elements that are determined by Colorado law. *Thompson*, No. 01CA1039, slip op. at 6–7. The court of appeals' approach is consistent with our stated principles of contract interpretation, the purpose of which is to give effect to the reasonable expectations of the parties. *Allen*, 71 P.3d at 378. When parties agree under the terms of an insurance policy that an insurer will defend its insured against specified causes of action, the reasonable expectation of the parties is that the insurer will defend its insured only against specific legal claims as they are defined by the law of the applicable jurisdiction. Hence, we conclude that the elements of covered claims should be interpreted in legal rather than in lay terms. This approach is implicit in the analysis applied by other courts construing the insurer's duty to defend.[7] Accordingly, in determining whether the duty to defend exists, we look to the causes of action expressly covered in the insurance policy and construe them as legal claims defined by our case law rather than construe them as lay terms in the insurance contract.

## III. ANALYSIS

### A. The Insurers Had No Duty to Defend under the Policy's Malicious Prosecution Provisions

We first consider whether the insurers' duty to defend against a claim of malicious prosecution was triggered by allegations that Thompson wrongfully filed a notice of lis pendens against Ridge's property. Although Ridge's complaint against Thompson did not include a claim for malicious prosecution, factual allegations supporting other claims in Ridge's complaint potentially trigger the malicious prosecution coverage in Thompson's policy. *See Lextron*, 267 F.Supp.2d at 1046–47 (claim need not be labeled properly in

underlying plaintiff's complaint if all elements of claim covered by insured's policy are alleged).

Thompson argues that because the elements of malicious prosecution are indefinite, Ridge's failure to allege that the action involving the lis pendens was resolved in its favor did not preclude the insurers' duty to defend. Thompson further contends that an allegation that a notice of lis pendens has been wrongfully filed supports a claim of malicious prosecution, even if the lis pendens action has not been favorably resolved.

The insurers argue that under Colorado law a claim for malicious prosecution does not arise until the prior action has been resolved in favor of the plaintiff. The insurers contend that because Ridge did not allege that the lis pendens action had terminated in its favor, the elements of malicious prosecution were not satisfied and their duty to defend was not triggered. The insurers also assert that Ridge's allegations regarding the lis pendens filing did not trigger Thompson's insurance coverage under Colorado law because all the elements of malicious prosecution were not satisfied.

■ We begin our analysis by comparing factual allegations in the complaint with the elements of the covered claim. Thompson's policy covers "personal injury," which includes "[m]alicious prosecution." The elements of malicious prosecution are: (1) the defendant contributed to bringing a prior action against the plaintiff; (2) the prior action ended in favor of the plaintiff; (3) no probable cause; (4) malice; and (5) damages. *See CJI–Civ. 4th* 17:1 (1999); *see also Lounder v. Jacobs*, 119 Colo. 511, 515, 205 P.2d 236, 238 (Colo.1949) (listing the same elements).

The issue in this case is whether the second element of malicious prosecution, favorable resolution, has been met by the allegations in Ridge's complaint against Thompson.

---

7. *See, e.g., Lextron*, 267 F.Supp.2d at 1047 (court first looks to the elements of the covered claims of defamation and invasion of privacy under the law of the relevant jurisdiction, Montana, to determine whether the insurer's duty to defend was triggered by facts alleged in the pleadings); *QSP*,

773 A.2d at 918–19 (court's first step in analyzing insurer's duty to defend against claim of malicious prosecution is to consider elements of the claim under applicable Connecticut case law).

Ridge's complaint did not allege that the lis pendens action had ended in its favor. In fact, when Ridge filed its amended complaint, the action involving the lis pendens was unresolved.[8] Nonetheless, Thompson argues that because the elements of malicious prosecution are indefinite, favorable resolution should not be required.

As discussed, when an insured contracts with an insurer to defend it against a specified legal claim, the claim is defined in legal rather than in lay terms. *See Lextron,* 267 F.Supp.2d at 1047. In this context, "malicious prosecution" is not merely a term in an insurance policy; it is a legal claim comprised of specific elements. Thus, any indefiniteness in the elements of malicious prosecution must arise from the definition of malicious prosecution in our case law.

■ If there is a split of authority interpreting an insurance policy provision, then the provision may be ambiguous. *Hecla,* 811 P.2d at 1092 n. 13. Because Colorado cases have construed and applied the tort of malicious prosecution on a number of occasions, we look to Colorado case law to determine whether the elements of malicious prosecution are indefinite.

■ Colorado courts have consistently defined this tort as requiring the favorable resolution of the prior malicious action. *See, e.g., Lounder,* 119 Colo. at 515, 205 P.2d at 238.[9] Thus, we conclude that the elements of the tort of malicious prosecution are not indefinite and do require favorable resolution of the prior action as a necessary element.[10] Because the complaint contained no legal or

factual allegations satisfying this element, we hold that the insurers' duty to defend was not triggered.

Even if favorable resolution is an essential element of the tort of malicious prosecution, Thompson argues that an allegation that a lis pendens has been wrongfully filed in itself triggers the insurers' duty to defend against a claim for malicious prosecution. To support this argument Thompson argues that our case law and the *Restatement (Second) of Torts* section 674 provide that a claim for malicious prosecution may be brought in ex parte civil proceedings, such as a lis pendens action, without proof of the necessary element of favorable resolution.

■ Turning to our case law, we conclude that where a lis pendens filing forms the basis of a claim for malicious prosecution, we have always required that the lis pendens be resolved in favor of the plaintiff. The filing of a notice of lis pendens may form the basis of a claim for malicious prosecution. *See Johnston v. Deidesheimer,* 76 Colo. 559, 561, 232 P. 1113, 1114 (Colo.1925); *Westfield Dev. Co. v. Rifle Inv. Associates,* 786 P.2d 1112, 1118–19 (Colo.1990); *Kerns v. Kerns,* 53 P.3d 1157, 1164 n. 6 (Colo.2002). However, where a wrongful lis pendens filing forms the basis of a malicious prosecution action, we have consistently required that the element of favorable resolution be met.

In *Johnston,* we stated that two allegedly wrongful lis pendens filings could form the basis of a malicious prosecution claim, but in that case the plaintiff alleged that the filings

---

**8.** After Ridge had filed its original complaint, Thompson recorded the notice of lis pendens. In response, Ridge filed an amended complaint containing new claims and allegations arising, in part, from the lis pendens recording.

**9.** *See also Bill Dreiling Motor Co. v. Herlein,* 543 P.2d 1283, 1285 (Colo.App.1976); *Sancetta v. Apollo Stereo Music Co., Inc.,* 44 Colo.App. 292, 616 P.2d 182, 183 (1980); *Walford v. Blinder, Robinson & Co., Inc.,* 793 P.2d 620, 623 (Colo. App.1990); 20 Eric M. Holmes, *Holmes' Appelman on Insurance 2d* § 131.2 (2002) ("A cause of action for the tort of malicious prosecution does not arise, mature, or accrue until all essential elements of the tort have materialized, including favorable termination of malicious action in favor of the victim."); *Black's Law Dictionary* 971

(7th ed. 1999) ("Once a wrongful prosecution has ended in the defendant's favor, he or she may sue for tort damages.").

**10.** Other jurisdictions are split on the issue of whether malicious prosecution should be distinguished from abuse of process, which does not require favorable resolution of the underlying malicious action. *Compare Heil Co. v. Hartford Accident & Indem. Co.,* 937 F.Supp. 1355, 1362–63 (E.D.Wis.1996) (allegation of abuse of process does not trigger insurer's duty to defend under malicious prosecution provision), *with DeVaney v. Thriftway Marketing Corp.,* 124 N.M. 512, 953 P.2d 277, 282–84 (1997) (holding that malicious prosecution and abuse of process are coextensive).

had already been dismissed, supporting the requirement of favorable resolution. *See* 76 Colo. at 559–61, 232 P. at 1113–14. In *Westfield,* we suggested that the element of favorable termination must be satisfied ·even where a lis pendens filing forms the basis of a claim for malicious .prosecution. 786 P.2d at 1119 n. 4 ("We also note that the malicious prosecution claim that arises out of the main action may not usually be brought as a counterclaim since the main action has not yet terminated in favor of the counterclaimant.... [But in this case] the judgment against Westfield on the main action is now final.").[11]

We next turn to Thompson's *Restatement* argument. Relying on a Colorado Court of Appeals opinion that refers to section 674, Thompson contends that in civil cases Colorado follows the definition of malicious prosecution contained in that section, which includes the ex parte exception for the wrongful filing of a lis pendens. *See Walford v. Blinder, Robinson & Co., Inc.,* 793 P.2d 620, 623 (Colo.App.1990); *see also Restatement (Second) of Torts* § 674 & cmt. k (1977). Despite the court of appeals' reference to section 674, that court expressly required that a prior civil proceeding be resolved in favor of the plaintiff before a claim ·for malicious prosecution matured, and the court did not mention the ex parte exception. *Walford,* 793 P.2d at 623. We also note that our *Colorado Jury Instructions* do not include the *Restatement* exception. *See CJI–Civ.· 4th* 17:1 n. 1 (1999) (citing to section 674 but requiring favorable resolution of prior civil action for malicious prosecution in civil context).

The *Walford* court did not specifically decide to include the *Restatement* exception in Colorado's definition of the ·tort of malicious prosecution. · We do not believe that the dispute in this case provides an appropriate opportunity for us to rule upon this·issue and thus decline to do so. We leave for another day the question of whether under Colorado law malicious prosecution should be modified to exclude the element of favorable resolution

when the claim is based upon the wrongful filing of a lis pendens.

Thus, we conclude that ·the allegations against Thompson did not trigger the insured's duty to defend for the claim of malicious prosecution because a claim for malicious prosecution under existing· Colorado case law requires that the prior claim, even if it involves an ex parte civil proceeding such as a lis pendens· filing, must be resolved in favor of the plaintiff.

**B. The Insurers Had No Duty to Defend under the Policy's Disparagement Provision ·because the Knowledge–of–Falsity Exclusion Precludes Coverage**

Next, we consider whether the insurers' duty to defend against a claim of disparagement was triggered by allegations that Thompson interfered with Ridge's ability to plat, finance, develop, and sell real property. · We begin our analysis of the disparagement claim by noting that Ridge's complaint did not include a claim for disparagement. However, Thompson argues that the factual allegation supporting claims for slander of title and intentional interference with contractual relations trigger the insurers' duty to defend under the disparagement policy provision. In analyzing the insurers' duty to defend, we review whether all the factual elements of a claim covered by the policy are alleged, even if the claim asserted is not labeled as that term is used in the policy. *Lextron,* 267 F.Supp.2d at 1046–47. Thus, we look to the factual allegations supporting Ridge's claims for slander of title and intentional interference with contractual relations to determine whether they satisfy the elements ,of disparagement under the terms of the insurance policy.

Initially, Thompson argues that Ridge's .claim for slander of title, standing alone, triggers coverage under the disparagement provision. Next, Thompson argues that the complaint against him alleged that Ridge's "services" were, disparaged, thereby triggering the insurers' duty to defend. The insurers argue that the slander of title and inten-

---

**11.** *Kerns,* a case that did not involve a claim of malicious prosecution, merely acknowledged the serious consequences of a lis pendens filing by

stating that the. "filing of a notice of lis pendens may be actionable as malicious prosecution." 53 P.3d at 1164 n. 6.

tional interference with contractual relations claims alleged against Thompson did not trigger their duty to defend under the policy's disparagement provisions. Alternatively, the insurers claim that the knowledge-of-falsity exclusion provision precludes coverage on the disparagement claim because Ridge alleged that Thompson sent the 1994 letter claiming a preemptive right of first refusal in Ridge's property knowing that it contained a false statement.

Reviewing the terms of both policies, we note that under the "personal injury" heading, both polices covered "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." The pivotal issue before us regarding the disparagement claim is whether Ridge alleged that Thompson had disparaged its "services" by interfering with its ability to plat, finance, develop, and sell property.[12] However, before we interpret the term "services" as used in the policy, and if necessary consider the knowledge-of-falsity exclusion provision, we address two preliminary issues.

■ First, although the issue was not raised in the parties' briefs, at oral argument the insurers argued that the disparagement provision covers the insured only in suits seeking damages for harm to character and reputation rather than claims seeking damages for economic harm. However, we dis-

agree with the insurers' contention because the tort of disparagement differs from defamation in that it focuses on the economic consequences of an injurious statement rather than on damage to reputation. *See, e.g., Zerpol Corp. v. DMP Corp.*, 561 F.Supp. 404, 408 (E.D.Penn.1983) ("The action for defamation serves to protect one's interest in character and reputation. The cause of action for disparagement, on the other hand, protects economic interests by providing a remedy to one who suffers pecuniary loss from slurs affecting the marketability of his business.").[13]

■ Second, Thompson argues that, by definition, the tort of disparagement encompasses a claim for slander of title, which was properly alleged by Ridge. We are not persuaded. While it is true that the tort of disparagement is often construed as encompassing a claim for slander of title,[14] the insurance policy limits the disparagement coverage to include only disparagement of an organization's "goods, products, or services." Because title to real property does not fall within the category of either "goods, products, or services,"[15] we conclude that Ridge's slander of title claim, standing alone, did not trigger the insurers' duty to defend.

Next, we turn to the difficult issue of whether the term "services" as defined by the insurance policy includes the activities of platting, financing, developing, and selling

**12.** Ridge did not allege that a person or organization had been slandered. Since Ridge's business involved the development and sale of real property, the disparagement of "goods" or "products" is not at issue. The policy specifically excluded "real property" from the definition of "product." "Goods" are defined as "[t]angible or movable personal property." *Black's Law Dictionary* 701–02 (7th ed.1999). Thus, the dispute over whether disparagement is covered involves whether Ridge alleged that Thompson had "disparage[d]" its "services."

**13.** *See also Bankwest v. Fid. & Deposit Co. of Md.*, 63 F.3d 974, 980 (10th Cir.1995) (bank's allegedly false statement in letter to two other banks that they were estopped from making future loans to a customer to whom it had orally agreed to extend a line of credit triggered duty to defend under disparagement provision). *But see PYCA Indus., Inc. v. Harrison County Waste Water Mgmt. Dist.*, 81 F.3d 1412, 1420 (5th Cir. 1996) (intentional interference claim based on

insured's assertion of contractual rights that it allegedly did not possess did not trigger duty to defend under same disparagement policy provision).

**14.** *See, e.g., Williams*, 540 F.Supp. at 1248 (disparagement includes a false statement "derogatory to the plaintiff's title to his property"); *Bankwest*, 63 F.3d at 980 (tort includes "disparagement of property"). *But see Bank One, Milwaukee, N.A. v. Breakers Dev., Inc.*, 208 Wis.2d 230, 559 N.W.2d 911, 912–13 (Wis.App.1997) (interpreting same policy provision as not covering slander of title).

**15.** As discussed, the policy specifically excluded "real property" from the definition of "product," and "goods" are defined as "[t]angible or movable personal property." *Black's Law Dictionary* 701–02 (7th ed.1999). "Service[s]," discussed below, are an "intangible commodity" and thereby do not include real property. *Black's Law Dictionary* 1372 (7th ed.1999).

property. The parties disagree as to the meaning of the term "services" under the insurance policy. Thompson argues that Ridge's complaint alleged that the 1994 letter to Jefferson County disparaged Ridge's services by interfering with its ability to plat, finance, develop, and sell property. The insurers respond that the allegations regarding the letter may slander title to Ridge's property but do not disparage its services. The term "services" is not defined in Thompson's policy. Therefore, we turn to the plain meaning of "services" found in dictionary definitions and case law.

Dictionary definitions support the position that Ridge's platting, financing, development, and sale of property constitute "services." *Webster's* defines "service" broadly as "useful labor that does not produce a tangible commodity." *Webster's Ninth New Collegiate Dictionary* 1076 (1989). Similarly, *Black's Law* defines "service" as "an intangible commodity in the form of human effort, such as labor, skill, or advice." *Black's Law Dictionary* 1372 (7th ed.1999). Platting, financing, developing, and selling of real property involve human labor and skill and do not produce a tangible commodity distinct from the real property itself. *See id.* at 1468 (defining "tangible" as "[h]aving or possessing physical form"); *id.* at 267 (stating that the term "commodity" "embraces only tangible goods, such as products or merchandise, as distinguished from services"; defining "commodity" as "[a]n article of trade or commerce" or "[a]n economic good, esp. a raw material or an agricultural product").

▮ Further, our Colorado cases have described the activities of developing and selling real estate as "services." In *Moeller v. Colorado Real Estate Commission,* we characterized the business of developing real estate as "services." 759 P.2d 697, 702 (Colo. 1988) (businessman was "not compensated for his work as a broker but for his services as a real estate developer"). Likewise, we have described the business of selling real

estate as "services." *Bray v. Trower,* 87 Colo. 240, 245, 286 P. 275, 277 (Colo.1930) ("Doll, Lamb & Woolery made their living by selling real estate; as far as appears of record, they received no compensation for their services other than through the increased price...."). Thus, our case law characterizes the business activities engaged in by Ridge as "services." Based on the plain meaning of the term "services" in dictionaries and our case law, we conclude that Ridge's platting, financing, developing, and selling property constitute "services" as that term is used by the policy.

▮ Because we conclude that Ridge's real estate development activities constitute "services," we briefly consider whether all of the elements of the claim of disparagement were alleged in Ridge's complaint and conclude that the complaint adequately pleads this claim. Following the elements of disparagement contained in *Williams v. Burns,* 540 F.Supp. 1243, 1248 (D.Colo.1982),[16] Ridge's amended complaint alleged that Thompson's letter asserting a preemptive right of first refusal was "false" (false statement); that it was published to the Jefferson County Planning Department (publication to a third party); that it was derogatory to Ridge's business because it interfered with the platting, financing, development, and sale of its property (derogatory to plaintiff's business); that Thompson intended or should have recognized that the letter would cause harm to Ridge's financial interest (intent to harm); that Thompson acted with "malice" (malice); and that Ridge suffered special damages (special damages). Thus, Ridge alleged that Thompson had disparaged its services as those terms are used in the policy.

Having determined that Ridge's complaint alleged that its services had been disparaged by Thompson, we next address whether Ridge's complaint alleged that Thompson knew that the statement forming the basis of its disparagement claim was false, thereby

---

**16.** The tort of disparagement consists of the following elements: (1) a false statement; (2) published to a third party; (3) derogatory to the plaintiff's title to his property or its quality, to his business in general or to some element of his personal affairs; (4) through which defendant intended to cause harm to the plaintiff's pecuniary interest or either recognized or should have recognized that it was likely to do so; (5) malice; and (6) special damages. *Williams v. Burns,* 540 F.Supp. 1243, 1248 (D.Colo.1982).

triggering the policy's knowledge-of-falsity exclusion provision. Because Ridge's complaint expressly alleges that the statement in Thompson's 1994 letter claiming a preemptive right of first refusal was "false," the only issue we must determine is whether the complaint alleges that Thompson knew the statement was false when he made it.

The insurers argue that Ridge's allegations that Thompson's actions were "intentional," "malicious," "willful and wanton," and "attended by circumstances of fraud" support the conclusion that the complaint alleged that Thompson knew that his 1994 letter claiming a preemptive right of first refusal was false. In response, Thompson argues that the allegations do not amount to knowledge of falsity and thus do not trigger the policy's exclusion provision.

Initially, we note that a person may make statements that are intended to harm without knowing that the statements are false. *Fed. Ins. Co.*, 637 F.Supp. at 1581. On the other hand, a person who intentionally makes a false statement unquestionably knows the statement is false at the time it is made. *See Equal Employment Opportunity Comm'n v. S. Publ'g Co.*, 894 F.2d 785, 790 (5th Cir. 1990) (knowledge-of-falsity exclusion provision triggered by intentional false statement).

Ridge alleged that Thompson knowingly agreed in the 1992 settlement to cooperate with Ridge's future platting efforts. According to the complaint, the 1992 settlement agreement specifically required Thompson to provide necessary documents and property to Ridge if it required an earlier conveyance or dedication "for purposes of meeting platting requirements of Jefferson County." Then, when Ridge attempted to dedicate property to facilitate the platting process in 1994, Thompson sent the letter to the Jefferson County Planning Department claiming a preemptive right of first refusal and refusing to "subordinate this right to Jefferson County, consent to the plat, [or] in any way sign or participate in any plat documents or subdivision improvement agreements." In its complaint, Ridge alleged that the statement claiming a preemptive right of first refusal was "false" and "contrary to the express and implied terms" of Thompson's settlement agreement. Further, Ridge's fraud claim incorporated its allegations regarding Thompson's 1994 letter and alleged that Thompson's actions were "intentional" and "attended by circumstances of fraud."

Reading the complaint as a whole, we conclude that Ridge's complaint fairly alleges that Thompson knew the statement in his 1994 letter to Jefferson County officials claiming a preemptive right of first refusal was false, thereby precluding coverage for the disparagement claim because of the knowledge-of-falsity exclusion provision. In short, Ridge's complaint alleges that in 1992 Thompson knowingly agreed to facilitate Ridge's platting efforts by allowing property to be conveyed or dedicated. Two years later, in 1994, Thompson falsely stated in a letter to Jefferson County planning officials that he possessed a preemptive right of first refusal which entitled him to refuse to cooperate in the platting effort and to refuse to allow property to be dedicated to Jefferson County knowing that these 1994 statements violated his 1992 settlement agreement.

Thus, we hold that although Ridge alleged Thompson had disparaged its services as a real estate developer, the insurers did not have a duty to defend the disparagement claim because the complaint, construed as a whole, alleged that Thompson knew that his 1994 letter claiming a preemptive right of first refusal was false.

## C. Conclusion

For the reasons stated above, we affirm the court of appeals' holding affirming the trial court's grant of summary judgment for the insurers, and return this case to that court with directions to remand the case to the trial court to dismiss.