FILED
United States Court of Appeals
Tenth Circuit

July 15, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

CHRISTINE WILLIAMS,

        Plaintiff - Appellant,

v.

OWNERS INSURANCE COMPANY,

        Defendant - Appellee.

No. 14-1262
(D.C. No. 1:12-CV-00999-MSK-CBS)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Judge, **LUCERO** and **MATHESON**, Circuit Judges.

Christine Williams appeals the district court's grant of summary judgment to

Owners Insurance Company (Owners) on her claims for breach of contract and bad

faith failure to pay her underinsured motorist (UIM) claim.  We affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    BACKGROUND

Ms. Williams was injured in an automobile accident on August 25, 2008.  She settled with the at-fault driver's insurance company on January 3, 2012, for the policy limit of $25,000.  She then sought payment from her own insurance company, Owners, for UIM coverage.  Her Owners policy required her to exhaust her claim against the at-fault driver before seeking payment under the Owners policy.  On January 10, 2012, she demanded the policy limit of $100,000 from Owners, stating that her unreimbursed medical expenses exceeded $50,000 and her lost income exceeded $60,000.

Owners personnel reviewed Ms. Williams's medical records and noted that her symptoms may have worsened over time; some injuries were degenerative and thus preexisting, rather than traumatically caused by the accident; and she had been in a subsequent automobile accident in October 2009.  As to the claimed lost wages, Owners observed that none of Ms. Williams's medical providers had restricted her from working.  In addition, the only documentation Ms. Williams initially provided to support her wage-loss claim was a spreadsheet she had prepared herself.

Considering the concerns raised by the documents provided, on February 6, 2012, Owners offered a $50,000 settlement and requested additional documentation, which Ms. Williams submitted.  Owners increased the settlement offer to $75,000 on February 29, 2012.  Ms. Williams rejected the offer, but demanded that Owners pay her the $75,000 pending a final settlement.  When Owners declined to pay without a

- 2 -

release of all claims, Ms. Williams filed suit on March 16, 2012. It is undisputed that the parties never reached an agreement as to the amount of UIM benefits to which Ms. Williams was entitled.

Ms. Williams brought claims for breach of contract, common law bad faith delay in processing her claim, and statutory bad faith delay in processing her claim.[1] After noting the law applicable to each claim, the district court determined that all claims had one element in common: whether Owners' conduct in processing Ms. Williams's claim was unreasonable. Concluding that Ms. Williams had not produced evidence demonstrating that Owners had acted unreasonably, the district court granted Owners' motion for summary judgment. Ms. Williams appeals, renewing on appeal her substantive claims. She also asserts error in the district court's articulation and application of the summary judgment standard and in the characterization of her expert witness's testimony.

## II.    STANDARDS OF REVIEW

We apply Colorado law to this insurance dispute based on diversity jurisdiction. *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009). We review the grant of summary judgment de novo, applying the same standards as the district court. *Id.* We view the facts, and all reasonable inferences supported by those facts, in the light most favorable to Ms. Williams as

---

[1]    Ms. Williams filed her complaint in Colorado state court. Owners removed the case to federal court, invoking diversity jurisdiction, *see* 28 U.S.C. § 1332(a).

the nonmoving party. *Id.* "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> An issue is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim. If a party that would bear the burden of persuasion at trial does not come forward with sufficient evidence on an essential element of its prima facie case, all issues concerning all other elements of the claim and any defenses become immaterial. If there is no genuine issue of material fact, we next determine whether the district court correctly applied the substantive law.

> The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. In so doing, a movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim. Such a movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.

> If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant. To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein. Thus, although our review is de novo, we conduct that review from the perspective of the district court at the time it made its ruling, ordinarily limiting our review to the materials adequately brought to the attention of the district court by the parties.

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citations and internal quotation marks omitted).

"Because our review is de novo, we need not separately address [Ms. Williams's] argument[] that the district court erred by viewing evidence in the light most favorable to [Owners] and by treating disputed issues of fact as undisputed." *Simmons v. Sykes Enters., Inc.*, 647 F.3d 943, 947 (10th Cir. 2011); *see also Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1227-28 n.9 (10th Cir. 2014) ("[B]ecause our standard of review is de novo, we are free to apply the proper test here, and we may affirm on any ground supported by the record."); *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991) ("When *de novo* review is compelled, no form of appellate deference is acceptable.").

## III. DISCUSSION

### A. Breach of Contract

The elements of a cause of action for breach of an insurance contract are "(1) the existence of a contract, (2) performance by the plaintiff or some justification for nonperformance, (3) failure to perform the contract by the defendant, and (4) resulting damages to the plaintiff." *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (citations omitted). The insurance contract between Ms. Williams and Owners included the following provision: "Whether an injured person is legally entitled to recover damages and the amount of such damages shall be determined by an agreement between the injured person and us." Aplt. App. at 116. Owners points out that the parties never reached an agreement on the amount of damages. Ms. Williams argues that enforcing this provision would permit Owners to avoid

payment merely by refusing to agree. Consequently, she contends that the clause

violates public policy and contravenes Colo. Rev. Stat. § 10-3-1115 (prohibiting

insurers from unreasonably denying or delaying payment for benefits owed to a

first-party claimant).

Owners' enforcement of this provision is not a breach of the contract. The

provision is indisputably part of the contract. Ms. Williams does not allege that the

parties reached an agreement on a settlement. Therefore, we consider whether

Owners violated public policy or section 10-3-1115 by unreasonably handling

Ms. Williams's claim. If the evidence had clearly established that Ms. Williams had

$100,000 in UIM exposure, but Owners refused to pay that amount, we could

conclude that the clause is unenforceable and Owners' conduct was unreasonable

and/or in bad faith. *See Goodson v. Am. Standard Ins. Co.*, 89 P.3d 409, 414

(Colo. 2004) (en banc) ("Every contract in Colorado contains an implied duty of

good faith and fair dealing."). But Owners reasonably disputed the amounts of

Ms. Williams's medical expenses and wage losses. Therefore, as we discuss below,

no reasonable jury could find that Owners unreasonably declined to pay the policy

limit of $100,000.

**B. Common Law and Statutory Bad Faith**

Ms. Williams claims Owners acted unreasonably and in bad faith as follows: (1) Owners' investigation was unreasonable because Owners did not begin to investigate until after January 13, 2012, when it received Ms. Williams's demand for payment under her UIM coverage, despite being informed in 2009 of the probability of a UIM claim; (2) Owners refused to pay her the $75,000 settlement offer as an undisputed minimum, even though a final settlement amount had not been reached; (3) Owners' settlement offers of $50,000 and $75,000 were unreasonable, given her documentation to support her claim for $100,000, and Owners did not explain the bases for the settlement offers; (4) Owners' agent did not consult a medical professional concerning her questions about Ms. Williams's claimed injuries; and (5) Owners' record-keeping was inadequate.

**(1) Applicable Law**

For a common law bad faith claim, because this is a "direct or first-party [claim], [the tort of bad faith processing of an insurance claim] requires proof of unreasonable conduct and knowledge that the conduct is unreasonable or a reckless disregard of the fact that the conduct is unreasonable." *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1276 (Colo. 1985) (en banc). "Under Colorado law, it is reasonable for an insurer to challenge claims that are 'fairly debatable.'" *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 496 (Colo. Ct. App. 2011).

Ms. Williams also brings claims under Colo. Rev. Stat. §10-3-1115(1)(a), which provides:  "A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant."  Section 10-3-1115(2) imposes an unreasonableness standard "for the purposes of an action brought pursuant to this section and section 10-3-1116."  Section 1116, in turn, creates a private right of action for certain remedies for violations of section 1115, and authorizes damages of two times the covered benefit plus attorney fees and court costs.

These statutes "impose on insurers a . . . standard of liability in addition to and different from that required to prove a claim for breach of the common law duty of good faith and fair dealing."  *Kisselman v. Am. Family Mut. Ins. Co.*, 292 P.3d 964, 973 (Colo. Ct. App. 2011).  An insurer breaches the statutory duty if there was "no reasonable basis to delay or deny the claim for benefits."  *Id.* at 974 (internal quotation marks omitted); *see also* section 10-3-1115(2) (stating "an insurer's delay . . . was unreasonable if the insurer delayed . . . authorizing payment of a covered benefit without a reasonable basis for that action").  In contrast to a common law bad faith claim, "the only element at issue in the statutory claim is whether an insurer denied benefits without a reasonable basis."  *Vaccaro v. Am. Family Ins. Group*, 2012 COA 9, ¶ 44, 275 P.3d 750, 760; *see id.* ¶ 44 (stating that a finding that a UIM claim was "fairly debatable" for common law purposes "would not alone establish that [the insurer's] actions . . . were reasonable as a matter of law.").

Both the common law and the statutes impose liability if the insurer acted unreasonably. Both types of claim are evaluated objectively, based on industry standards. *Savio*, 706 P.2d at 1276 (common law claim); *Fisher v. State Farm Mut. Auto. Ins. Co.*, 2015 COA 57, ¶ 53, 2015 WL 2198515, at * 9 (statutory claim). Ms. Williams had the burden to establish that Owners acted unreasonably. *See Bankr. Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 523 (Colo. Ct. App. 2008). The issue of unreasonableness is usually a question of fact, but "in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law." *Id.* at 524.

**(2) Application**

We first address Ms. Williams's claim that Owners unreasonably delayed investigating her claim. Ms. Williams asserts that Owners should have begun its investigation in 2009 upon being informed of the probability of a UIM claim, not in 2012 when it received her demand for payment. To carry her burden to show that Owners acted unreasonably in violation of industry standards, Ms. Williams relies on excerpts from the deposition of her expert witness, Bradley Levin. Mr. Levin testified that Owners' request for additional documentation to support the wage loss claim was not unreasonable, but Owners should have requested additional information from Ms. Williams about her wage loss claim in January, 2012. He did not say Owners should have made the request in 2009. *See Sanderson v. Am. Family Mut. Ins. Co.*, 251 P.3d 1213, 1220 (Colo. Ct. App. 2010) (holding plaintiff's UIM

claims did not accrue until his lawsuit against the underinsured driver was resolved where insurance policy provided for UIM coverage only after liability policies had been exhausted). Mr. Levin did not testify that his opinion that Owners should have asked for additional documents in January was based on industry standards.

Owners received Ms. Williams's demand package on January 13, 2012. On February 6, Owners requested further documentation. On February 29, 2012, Owners offered $75,000. Thus, 46 days elapsed between Ms. Williams's demand and Owners' offer. We conclude that under these circumstances, no reasonable jury could find that Owners unreasonably delayed investigating Ms. Williams's UIM claim.

We next determine that Owners' refusal to pay Ms. Williams the $75,000 settlement offer as an undisputed minimum does not warrant a finding of bad faith or unreasonable conduct. Indeed, the Colorado Court of Appeals has stated in dicta that "an assertion that [an insurer] breached its duty under section 10-3-1115 by failing to pay [its insured] the initial settlement offer is inconsistent with Colorado law." *Fisher*, 2015 COA 57, ¶ 15 (addressing claim advanced at trial that insurer unreasonably delayed paying insured's medical expenses, which were owed regardless of settlement offer).

Ms. Williams asserts that Owners' settlement offers of $50,000 and $75,000 were unreasonable, given her documentation to support her claim for $100,000. But she does not address, or even acknowledge, Owners' reservations about her medical

expenses—her symptoms worsened over time, some injuries were degenerative rather than traumatic, and she was in a subsequent accident. Similarly, she offers no response to Owners' challenges to her wage loss claim—the evidence does not contain a doctor's limitation on her ability to work, she did not proffer admissible evidence that she hired and paid others to perform her work, and the spreadsheet she prepared herself was inadequate to substantiate her lost wages. Rather, she argues merely that she presented "ample evidence establishing that Owners disregarded relevant medical opinions," Aplt. Opening Br. at 37, and she "put forward evidence showing that Owners ha[d] no reasonable excuse for failing to perform the contract," *id.* at 47. These arguments consisting of mere conclusory allegations are insufficient to warrant appellate review. *See Palma-Salazar v. Davis*, 677 F.3d 1031, 1037 (10th Cir. 2012) (declining to address conclusory statements (collecting cases)).

Ms. Williams also claims that Owners' failure to explain its offers of $50,000 and $75,000 showed bad faith. But the correspondence between Owners and Ms. Williams demonstrated that Owners had questions about her medical and wage loss claims. Upon receipt of additional documentation after making the $50,000 offer, Owners increased its offer to $75,000. And if Ms. Williams was confused about the basis for the offer, she could have asked, but there is no indication that she did.[2]

---

[2] Ms. Williams relies on Colo. Rev. Stat. § 10-3-1104(1)(h)(XIV), which lists as an unfair or deceptive insurance practice a failure to promptly explain the basis for a

(continued)

- 11 -

We next address Ms. Williams's claim that Owners' agent acted unreasonably and in bad faith by not consulting a medical professional to resolve her concerns about Ms. Williams's claim for damages related to medical expenses. Ms. Williams again relies on her expert witness's opinion. Mr. Levin opined that as a layperson, the agent evaluating a claim must have a reasonable basis for rejecting the claim and may not reject a treating physician's statement without first consulting a medical professional. But Mr. Levin did not state whether this procedure was an industry standard, a condition imposed by law, or merely his personal opinion of how this claim should have been handled. Moreover, when asked whether the Owners agent had the capacity or training to evaluate a medical claim without consulting a medical professional, Mr. Levin replied, "She may or she may not." Aplt. App. at 106. Mr. Levin did not explain how Owners' evaluation of the claim was deficient. Consequently, this opinion does not demonstrate that Owners unreasonably or in bad faith challenged Ms. Williams's medical claim or that Owners violated industry standards.

Last, we consider Ms. Williams's claim that Owners' record-keeping was inadequate. Mr. Levin stated that industry standards require an insurer to keep detailed records concerning a claim and that Owners' internal records did not meet this standard. He did not opine, however, that this failure had any impact on Owners'

---

settlement offer. Even if it applied to our facts, this section does not create a private right of action. Colo. Rev. Stat. § 10-3-1114.

actions toward Ms. Williams.  Thus, Ms. Williams has not shown that Owners'

inadequate record-keeping resulted in any unreasonable actions toward her.

## C. Expert Witness Testimony

Ms. Williams takes issue with the district court's treatment of her expert

witness's testimony, asserting that the court interpreted and weighed the testimony in

the light most favorable to Owners.  She argues that once the court received

Mr. Levin's testimony on summary judgment as an expert under Fed. R. Evid. 702,

the court should have presumed that his opinions espoused industry standards.

Ms. Williams has cited no legal authority for this position.  The district court

carefully reviewed the testimony to determine whether Mr. Levin was, in fact,

describing industry standards, which was part of Ms. Williams's burden.  Based on

our de novo review, we perceive no error.

## IV.    CONCLUSION

The judgment of the district court is affirmed.


Entered for the Court


Mary Beck Briscoe
Chief Judge